**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ROSE CAMARILLO-NGO,

    Plaintiff,

v.                                                   CASE NO. 3:08-cv-500-J-TEM

MICHAEL J. ASTRUE, Commissioner
of Social Security,

    Defendant.
_____

## **ORDER AND OPINION**

This cause is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her claim for disability benefits. Plaintiff filed a memorandum in support of the complaint (Doc. #22). Defendant filed a memorandum in support of the Commissioner's decision to deny disability benefits (Doc. #25). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations.

Accordingly, the instant matter has been decided on the written record. For the reasons set out herein, **the Commissioner's decision is AFFIRMED**.

## I. Procedural History

Plaintiff Rose Camarillo-Ngo ("Plaintiff") filed an application for disability insurance benefits ("DIB") on October 20, 2004, alleging disability as of August 2, 2004 (Tr. 12, 64-66). Plaintiff's initial application was denied, as was her request for reconsideration (Tr. 12 28, 53, 61). Plaintiff requested a hearing before Administrative Law Judge ("ALJ") Robert Droker and a hearing was held on October 2, 2007 (Tr. 52, 850). On December 12, 2007, the ALJ issued an unfavorable decision (Tr. 9-22). Subsequently, the Appeals Council affirmed the decision of the ALJ, rendering the ALJ's decision final (Tr. 4-7). Plaintiff now appeals.

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i-v);[1] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the

---

[1]All references made to 20 C.F.R. will be to the 2009 edition unless otherwise specified.

findings are supported by substantial evidence.  *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703

F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

### III. Statement of the Facts

Plaintiff was born on February 21, 1972 (Tr. 25). At the time of the ALJ's decision Plaintiff was thirty-five (Tr. 853). Plaintiff has a high school education, plus one year of college, and her past relevant work experience includes food service manager, customer service representative, reservations agent with an airline, claims examiner, and retail store associate (Tr. 104, 854, 856). After reviewing the entire record and the testimony from the October 2, 2007 hearing, the ALJ found Plaintiff has the severe impairments of coronary artery disease, status post myocardial infarction, headaches, affective disorder, obesity, and disorders of the spine (Tr. 14).

On August 4, 2004, Plaintiff suffered a heart attack (Tr. 855). She maintains that since then she has been unable to return to work, although she did try to return to work in October 2007 (Tr. 855). Plaintiff's main treating cardiologists have been Thomas Wolford, M.D. ("Dr. Wolford") and James Campbell, Jr., M.D. ("Dr. Campbell"), who both treated

4

Plaintiff for complaints of chest pain and have conducted multiple heart catherizations on Plaintiff (Tr. 470-533). Richard Wetmore, M.D. ("Dr. Wetmore") and Frank Collier, Jr., M.D. ("Dr. Collier") have both treated Plaintiff for back pain (*see* Tr. 415, 575, 564). Additionally, in February 2006, M.W. Kilgore, M.D. ("Dr. Kilgore") treated Plaintiff for headaches and prescribed her medication; he also directed Plaintiff to keep a headache diary (Tr. 779-82).

With respect to Plaintiff's mental impairments, on March 14, 2005, Dr. Wetmore, Plaintiff's primary care physician, stated that Plaintiff has suggestive symptoms of anxiety, but did not at that time carry an official diagnosis of anxiety disorder (Tr. 384). On September 13, 2005, Lauren Lucas, Ph.D. ("Dr. Lucas") performed a consultative examination of Plaintiff and found Plaintiff competent to perform routine repetitive tasks and appreciate the need for appropriate relations among co-workers and supervisors (Tr. 439-41). From June 2006 through May 2007, Plaintiff was treated by psychiatrist Sivanta Paul, M.D. ("Dr. Paul") (Tr. 783-96). On March 28, 2005 and September 14, 2005, A. Alvarez Mullin, M.D. ("Dr. Mullin") and Gary W. Buffone, Ph.D. ("Dr. Buffone") completed Psychiatric Review Techniques Forms ("PRTF"s), finding Plaintiff did not have a severe mental impairment and that she only has mild functional limitations (Tr. 298-311, 442-55).

At the hearing, the ALJ received testimony from a vocational expert, Ronald Spitznagel, M.D. (the "VE") (Tr. 866-73). After being asked to consider a hypothetical question that included light work and a low-stress work environment, the VE testified that Plaintiff could not perform her past relevant work (Tr. 868-69). The ALJ then modified the hypothetical by including entry-level work and a claimant with "no skills or semi skills at all," and the VE identified the representative jobs of gate guard, silver wrapper, information clerk, and surveillance system monitor that Plaintiff can perform (Tr. 869-71). Based on the

VE's testimony in response to the second hypothetical question, *supra*, the ALJ found a significant number of jobs exist in the regional and national economy that Plaintiff can perform despite her limitations (Tr. 21). Consequently, a finding of not disabled was entered (Tr. 21).

## IV. Analysis

Plaintiff contends the ALJ erred by not including all of Plaintiff's limitations in the hypothetical question(s) that were posed to the VE (Doc. #22 at 7-11). Specifically, Plaintiff argues the ALJ "failed to include any restrictions related to her mental health difficulties" (Doc. #22 at 8). The undersigned is not persuaded by this argument for the reasons that follow.

The Commissioner has supplemented the five-step sequential evaluation process for evaluating a claimant's eligibility for benefits with additional regulations that deal specifically with mental impairments, otherwise known as the "special technique." 20 C.F.R. § 404.1520a. This "special technique" requires the ALJ to, *inter alia*, evaluate the pertinent signs, symptoms, and laboratory findings contained within the case record in order to determine if a mental impairment exists. 20 C.F.R. § 404.1520a(b)(1). If such an impairment is found, the ALJ must then analyze whether certain medical findings relevant to the claimant's ability to work are present or absent. 20 C.F.R. § 404.1520a(b).

The examiner is required to rate the degree of functional loss resulting from the impairment in certain specific areas deemed essential for work. 20 C.F.R. § 404.1520a(d). These areas are: daily living; social functioning; concentration, persistence, or pace; and deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3). If a claimant's mental impairment is considered "severe," the examiner

6

then determines whether it meets a listed mental disorder under 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 1520(d); 404.1525, 404.1526) (the "Listings"). 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe, but does not reach the level of a listed disorder, then the examiner must conduct a RFC assessment. 20 C.F.R. § 404.1520a(d)(3).

> The Regulations provide as follows:
>
> When we [the SSA] rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

20 C.F.R. § 404.1520a(c)(4).

The ALJ's evaluations regarding the degree of functional loss in the four aforementioned areas of function must be incorporated into his or her findings and conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005); *see also* 20 C.F.R. §404.1520a. "Where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF [Psychological Review Technique Form] and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand." *Moore*, 405 F.3d at 1214.

If the ALJ finds a plaintiff's impairment or combination of impairments to be severe, then the ALJ must determine whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of a listed impairment. To meet a listing,

7

the "paragraph B" criteria must be met, which means the impairment must result in a marked limitation in at least two of the four categories delineated in 20 C.F.R. § 404.1520a(c)(4), *supra*. A marked limitation means more than moderate but less than extreme. 20 C.F.R. Part 404, Subpart P, Appendix 1.

In this instance, the ALJ found Plaintiff to have the severe impairment of an affective disorder (Tr. 14). Following the requirements set forth in 20 C.F.R. § 404.1520a(c)(4), the ALJ found Plaintiff's affective disorder causes "mild restriction" in activities of daily living and "mild difficulties" in social functioning (Tr. 17). With respect to maintaining concentration, persistence, or pace, the ALJ found Plaintiff has "moderate difficulties" (Tr. 17). The ALJ also found Plaintiff experienced no episodes of decompensation (Tr. 17). Thus, the ALJ determined that the "paragraph B" criteria were not satisfied because Plaintiff's mental impairment "does not at least cause two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation" (Tr. 17).

The undersigned finds the ALJ properly addressed Plaintiff's mental impairment when he found Plaintiff's affective disorder was a severe impairment and then proceeded to apply the "special technique" in finding Plaintiff did not meet the requirements of a listed impairment. The ALJ then appropriately translated the aforementioned limitations into work-related functions in Plaintiff's residual functional capacity assessment.

**A. Plaintiff's Residual Functional Capacity ("RFC") Assessment**

In general, a claimant's RFC is an assessment based on all the relevant evidence of a claimant's remaining ability to perform work activity despite his or her impairments. 20 C.F.R. § 404.1545; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of any RFC assessment is on the physicians' evaluations of a plaintiff's condition(s) and the

8

resulting limitations that stem therefrom. *Id.*

Here, the ALJ found Plaintiff has the following RFC: "[the ability to perform] sedentary and light work except that she must avoid ladders or unprotected heights and avoid operation or proximity to heavy moving machinery. The claimant can occasionally bend, crouch, kneel, stoop, squat, or crawl. Additionally, the claimant needs a low stress job" (Tr. 17-18). For the reasons that follow, the undersigned finds the ALJ's RFC determination is supported by substantial evidence of record.

In making his RFC determination, the ALJ considered all of Plaintiff's symptoms and the extent to which her symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record (Tr. 18). The ALJ also determined that, while Plaintiff's impairments could reasonably give rise to the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible (Tr. 19). Specifically, regarding Plaintiff's allegations of depression, the ALJ concluded that "the medical evidence shows little treatment for a mental impairment" (Tr. 20). On September 13, 2005, Dr. Lucas reported that Plaintiff appeared psychologically competent to perform routine, repetitive tasks and to appreciate the need for appropriate relations among co-workers and supervisors (Tr. 20, 439-41). The ALJ gave this opinion great weight—as he found it was consistent with the evidence of record (Tr. 20). The undersigned finds the ALJ's determination in this regard to be supported by substantial evidence.

To illustrate, on March 28, 2005 and September 14, 2005, Psychiatric Review Technique Assessments were conducted regarding Plaintiff's mental functioning (Tr. 298-311, 442-55). In these assessments, Drs. Mullin and Buffone each stated that Plaintiff did

9

not have a severe mental impairment (Tr. 310, 454). Further, neither doctor listed Plaintiff's limitation higher than "mild" in the category of maintaining activities of daily living; social functioning; and concentration, persistence, or pace (Tr. 308, 452). The ALJ, however, gave Plaintiff "the benefit of the doubt" and assessed greater limitations, *i.e.* that she has "moderate" difficulties with concentration, persistence, or pace, rather than "mild" difficulties (Tr. 17, 20). Based on the foregoing, the undersigned finds the ALJ's RFC assessment is supported by substantial evidence.

### B. The ALJ's Hypothetical Question(s)

Plaintiff next argues that the ALJ erred in failing to include any restrictions related to her mental impairment(s) in the hypothetical questions posed to the VE (Doc. #22 at 8). In the Eleventh Circuit, if an ALJ elects to use vocational expert testimony, then he or she must pose a hypothetical question that encompasses all of a plaintiff's severe impairments in order for the vocational expert's testimony to constitute substantial evidence. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). An ALJ, however, is not required to include unsupported allegations in the hypothetical question(s) posed to a vocational expert. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (finding an ALJ is not required to instruct the VE to assume conditions that he or she does not find exist.) The hypothetical question must "incorporate reasonably all disabilities of the claimant recognized by the ALJ." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

In the instant case, the undersigned finds the ALJ's hypothetical questions posed to the VE reasonably included all of the limitations found in the ALJ's RFC assessment (Tr. 17-18, 868-70). More particularly, at the October 2, 2007 hearing, the ALJ asked the VE to consider the following:

10

> Assume I find that the claimant is 35 years old and has a high school education plus one year of college. Assum[e] further that I find that she could only perform light work and is further limited by the following exertional and non-exertional impairments. She needs a sit/stand option. She needs to avoid ladders or unprotected heights. She needs to avoid the operation of heavy, moving machinery. She needs a low-stress work environment. She can only occasionally bend; crouch; kneel; stoop; squat or crawl. Can the claimant perform any of her past work, and if so, what jobs?

(Tr. 868-69).

In response to this hypothetical question, the VE testified that Plaintiff could not return to her past relevant work as a reservation agent due to the stress involved, and that her jobs as a food service manager and clothing sales representative would also be eliminated since they generally do not allow a sit/stand option (Tr. 869).

The ALJ then modified the hypothetical question to assume entry-level work and "that the claimant has no skills or semi-skills at all, and that she's the age previously described and has the same work experience and education previously stated" (Tr. 869). The VE was directed to further assume that the claimant could perform light work, and that she had the exertional and non-exertional limitations described in the first hypothetical, *supra* (which included the need for a low stress work environment (Tr. 869-70)). The ALJ asked the VE to describe any entry-level jobs the claimant could perform, and that if there were any non-included sedentary level jobs, to describe those as well (Tr. 869-70).

Based on this (second) hypothetical, the VE identified the jobs of gate guard, silver wrapper, information clerk, and surveillance system monitor (Tr. 870-71). *See* United States Dep't of Labor, *Dictionary of Occupational Titles* (the "DOT") §§ 372.667-030, 318.687-018, 237.367-022, 379.367-010 (4th Ed. 1991). The ALJ relied on this response by the VE to conclude, at the fifth step of the sequential evaluation process, that other jobs

11

exist in significant numbers in the regional and national economy that Plaintiff can perform despite her limitations (Tr. 21).

Plaintiff asserts, however, that the ALJ erred in this regard because the hypothetical question(s) did not include any restrictions related to her mental impairment(s) (Doc. #22 at 8-9). More particularly, Plaintiff argues that the ALJ should have more clearly defined the term "low stress" (Doc. #22 at 8-9). The undersigned is not persuaded by this argument as he finds the ALJ reasonably included in the second hypothetical question all of Plaintiff's limitations that are supported by the record, and that any further explanation of the term "low stress" was not necessary in this instance.

To illustrate, the ALJ's modified (second) hypothetical question asked the VE to assume that Plaintiff has no skills or semi-skills and that she requires a low stress job (Tr. 869). The undersigned finds these limitations adequately encompass the limitations that stem for Plaintiff's mental impairment(s), as found by the ALJ. Specifically, although the Court of Appeals for the Eleventh Circuit has not directly addressed this specific issue, case law from other circuit courts of appeals, which the undersigned finds persuasive, supports the notion that claimants with mild to moderate deficits in concentration, persistence or pace can perform low stress, simple, routine, or semi-skilled work. *See Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (finding hypothetical limiting plaintiff to jobs that are "routine and low stress" adequately accounted for plaintiff's "'often' deficiencies in concentration, persistence, or pace"); *Jens v. Barnhart*, 347 F.3d 209, 212-13 (7th Cir. 2003) (finding plaintiff capable of semiskilled work even though he "often" had "deficiencies of concentration, persistence, or pace"); *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002) (deeming acceptable an ALJ's RFC assessment which provided that the plaintiff

12

could perform "repetitive, low-stress work" even though he had "moderate" mental limitations); *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (finding "ALJ's hypothetical concerning someone who is capable of doing simple, repetitive, routine tasks adequately captures [plaintiff's] deficiencies in concentration, persistence, or pace").

Additionally, in determining Plaintiff's limitations that result from her mental impairment(s), the ALJ relied on a Psychiatric Review Technique Form ("PRTF"), filled out by Gary W. Buffone, Ph.D. ("Dr. Buffone") on September 14, 2005 (Tr. 20, 442-55). In this PRTF, Dr. Buffone stated that Plaintiff had mental impairments that were not severe (Tr. 442). Dr. Buffone additionally found that Plaintiff's limitations did not satisfy the "B" criteria of the mental listings, and noted Plaintiff's limitations as "mild" in all areas (Tr. 452). Giving Plaintiff the "benefit of the doubt," however, the ALJ assessed greater limitations than those accessed by Dr. Buffone by finding Plaintiff has "moderate" limitations in maintaining concentration, persistence, or pace (Tr. 17, 20).

As the Eleventh Circuit has indicated, using the specific ratings from the special technique in an RFC finding or hypothetical question is not required. *Martino v. Barnhart*, No. 01-17085, 2002 WL 32881075, at *2 (11th Cir. Sept. 27, 2002) (holding an ALJ "is not required to incorporate the 'B' criteria of [PRTFs] in their RFC assessments") (*citing* SSR 96-8p);[2] *see also Smith*, 307 F.3d at 379 (finding that the ALJ did not need to include a finding on a PRTF in a hypothetical question).

In *Stout v. Astrue*, No. 3:07-cv-987, 2009 WL 890388 (M.D. Fla. Mar. 31, 2009), this Court previously addressed a similar issue. In *Stout*, the ALJ found the plaintiff had "mild

---

[2]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

to moderate" limitations in maintaining concentration, persistence, or pace.  *Id.* at *3.  The question in *Stout* was whether the ALJ's assessment of the plaintiff's residual functional capacity and the hypothetical question posed to the VE  (which provided that the plaintiff was to "avoid work that involves unusual stress") adequately accounted for the ALJ's finding that Plaintiff's affective disorder was a severe impairment that resulted in mild to moderate difficulties in maintaining concentration, persistence or pace.  *Id.*  This Court, in *Stout,* found the ALJ's hypothetical question, which limited the plaintiff to low stress jobs, adequately accounted for mild to moderate limitations in maintaining concentration, persistence, or pace.  *Id.* at *3.

The Court recognizes that in *Clements v. Astrue*, No. 3:08-cv-65, 2009 WL 260980 (M.D. Fla. Feb.4, 2009), the Court was faced with an issue similar to the present one; however, in *Clements*, the ALJ found the plaintiff had "moderate restrictions in her activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace.  *Id.* at *6.  In both the plaintiff's RFC and hypothetical question posed to the VE, the ALJ in *Clements* attempted to account for Plaintiff's mental difficulties by precluding Plaintiff from holding occupations which required more than occasional contact with the public.  *Id.*  The Court remanded the case due to an error in the weight given a treating physician's opinion and on this issue for ALJ to develop a RFC finding reflective of all of the plaintiff's impairments and to pose a hypothetical setting forth the same.  *Id.*  The Court found it unclear whether the limitation to no more than occasional contact with the public sufficiently encompassed all the impairments recognized the by the ALJ.  *Id.*

14

In contrast, the Court finds the mental limitations in this case were adequately accounted for in the functional limitations that restrict Plaintiff to low stress entry-level work (*see* Tr. 869-71). Plaintiff in the case at bar was not determined to have moderate limitations in all three broad functional areas of activities of daily living; social functioning; and concentration, persistence or pace, as was the plaintiff in *Clements*. Here, Plaintiff was determined to have only "moderate" limitations in the single area of concentration, persistence or pace. The plaintiff in *Clements* also presented evidence of a GAF scores ranging from 30 to 55,[3] *see Clements*, 2009 WL 260980 at *4, whereas in this case, Plaintiff has not presented any evidence that her affective disorder has resulted in serious impairment of functioning.

Additionally, the record reflects that the VE understood what was meant by low stress since he stated that Plaintiff would not be able to return to her prior work as a reservation agent due to the stress involved with that job (Tr. 869). The category of concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings. 20 C.F.R. Pt. 404, Subpt. P, App. 1. By limiting Plaintiff to entry-level, low stress jobs, the Court finds Plaintiff's mental limitations were adequately accounted for in ALJ's second hypothetical question, *supra*. *See Wright v. Astrue*, No. 5:07-cv-280-Oc-10GRJ, 2008 WL 4058864, *6 (M.D. Fla. Aug. 27, 2008) ("by

---

[3]The Global Assessment of Functioning Scale ("GAF") was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. A GAF score of 31-40 describes "major impairment" in several areas such as work, school, family relations, judgment, thinking, or mood. A GAF score of 41-50 describes "serious symptoms" and includes serious impairment in the social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

including a limitation in the hypothetical to simple, low stress unskilled work involving simple instructions the ALJ recognized and took into account any moderate limitation in any ability of the [p]laintiff to maintain concentration, persistence or pace.").

Plaintiff next argues that the ALJ erred by not including in his hypothetical that Plaintiff would need to avoid any job that "requires interaction with crowds or the general public" (Doc. #22 at 8). While the ALJ did not expressly direct the VE to assume these alleged limitations, any error in this regard would nevertheless be harmless in this instance because the DOT reflects that the representative occupations offered by the VE do no not require significant interaction with crowds or the general public. *See*, *e.g.*, DOT § 372.667-030, 1991 WL 673099 (gate guard); DOT § 318.687-018, 1991 WL 672757 (silver wrapper); DOT § 237.367-022, 1991 WL 672188 (information clerk); DOT § 379.367-010, 1991 WL 673244 (surveillance system monitor); *see also* DOT, Appendix B, 1991 WL 688701 (4th Ed. Rev. 1991) (setting forth elements of the "People" interaction component of the various Specific Vocational Preparation "SVP" ratings).

For instance, the occupations of gate guard, information clerk, and surveillance system monitor all have a SVP "People" ratings of 6, which provides as follows: "Speaking-Signaling: Talking with and/or signaling people to convey or exchange information. Includes giving assignments and/or directions to helpers or assistants." *Id.* This level of interaction is described as being primarily with co-workers—not with crowds or the general public*. Id.; see also* (Tr. 20, 439-41) (Dr. Lucas' report that Plaintiff is psychologically competent to appreciate the need for appropriate relations among co-workers and supervisors).

16

Although the occupation of silver wrapper has a SVP "People" rating of 8, this classification does not indicate significant interaction with crowds or the general public, as its classification provides: "Taking Instructions-Helping: Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers." DOT, Appendix B, 1991 WL 688701.

Furthermore, Plaintiff merely speculates that the representative jobs cited by the VE would require more social interaction than the evidence demonstrates Plaintiff is capable of handling. To illustrate, Plaintiff merely asserts that "any job that requires interaction with crowds or the general public such as an information clerk would probably be eliminated" and "[a]rguably any job has stress but the inclusion of a gate guard position where there may be a confrontation with a person, albeit infrequently, is suspect as an appropriate choice for this plaintiff without any clear definition of the phrase 'low stress'" (Doc. #22 at 8-9).

In the absence of any evidence that the jobs cited by the VE would require significant contact with crowds or the general public, the undersigned finds any error that could be attributed to the ALJ for not including a limitation on interaction with crowds or the general public would be harmless in this instance. *See Grindstaff v. Astrue*, No. 08-3367-TLW-BHH, 2010 WL 569660, *5 (D. S.C. Feb. 12, 2010) (noting "in the utter absence of any evidence that the jobs noted by the VE and the ALJ require significant public contact, remand would seem to be a strained result").

Plaintiff next argues that the ALJ should have included limitations that stem from her headache pain in the hypothetical question posed to the VE (Doc. #22 at 9-10). Plaintiff,

17

however, has not provided evidence to support her contention that her headaches impose work-related limitations upon her. As part of her burden of proving that she is disabled, Plaintiff must establish, through objective medical evidence, that her impairments limit her ability to work. 20 C.F.R. § 404.1512(c). An individual's statement concerning pain is not conclusive evidence of a disability. 20 C.F.R. § 404.1529(a). Moreover, a diagnosis of chronic intractable pain is likewise not enough to establish separate functional limitations in addition to those already established by the record and found credible by the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (finding the mere existence of an impairment neither reveals the extent to which the impairment limits one's ability to work, nor does it undermine the ALJ's determination in that regard). The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of normal bodily function. *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002).

Although Plaintiff states that she experiences headache pain, she has not provided evidence of how her headache pain affects her ability to work. No physician, whether treating or evaluating, has determined Plaintiff's headache pain limits her ability to work. On November 28, 2005, a Physical RFC Assessment was completed by Robert L. Wesly, M.D. ("Dr. Wesly") (Tr. 540, 545). In it, Dr. Wesly reports that Plaintiff's headaches are not limiting (Tr. 540, 545). On February 16, 2006, Plaintiff presented to M.W. Kilgore, II, M.D. ("Dr. Kilgore") for "intractable headache," but Dr. Kilgore did not access any limitations to Plaintiff's ability to work due to her headaches (Tr. 779). In addition, during the October 2, 2007 hearing, Plaintiff did not testify to any limitations with respect to her headache pain (*see* Tr. 850-66). In fact, Plaintiff testified that her headaches were "tolerable" and that

18

"[she] just deal[s] with them" (Tr. 864). She further stated that she only takes Excedrin for the pain (Tr. 864). Moreover, when afforded a chance, Plaintiff's attorney did not ask the VE any questions regarding Plaintiff's headache pain (*see* Tr. 872-73).

Conditions amenable to treatment or adequately controlled by medication are generally not considered disabling. *See, e.g.*, *Rose v. Apfel*, 181 F.3d 943, 944 (8th Cir. 1999) (ALJ's finding that the plaintiff was not disabled was supported by the fact that plaintiff's asthma and diabetes were controlled successfully by medication); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) (finding lack of regular use of potent pain medication militates against allegations of constant and severe pain).

Based on the foregoing, this Court finds the ALJ did not err by omitting from his hypothetical question limitations from headache pain that are not supported by the record. *See Crawford*, 363 F.3d at 1161 (finding an ALJ is not required to instruct the VE to assume conditions that he or she does not find exist).

Plaintiff finally argues (in a perfunctory manner) that "[the ALJ] never appropriately assessed [her] level of pain as required by the case law" (Doc. #22 at 9). In support of this argument, Plaintiff did not cite the case law to which she refers (*see* Doc. #22 at 9). In addition, apart from merely stating that she: (1) has had a longstanding back condition; (2) has been evaluated for a spinal cord stimulator; and (3) has been prescribed narcotic pain medication, Plaintiff did not provide any supporting facts, nor did she cite to the record (*see* Doc. #22 at 9). As such, this issue is deemed to be waived. *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir.1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *Cont'l Technical Services v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th

Cir.1991) (finding that a "simple contention" does not present an argument and therefore is waived); *see also Callahan v. Barnhart*, 186 F.Supp.2d 1219, 1230 n. 5 (M.D. Fla. 2002) ("Such a cursory treatment of a potentially important issue is taken by this Circuit to be a sign that the party has abandoned the issue.").[4]

## V. Conclusion

Upon due consideration, the undersigned finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of March, 2010.

Copies to all counsel of record

**THOMAS E. MORRIS**
United States Magistrate Judge

---

[4] Nevertheless, the undersigned would note that the ALJ cited several reasons for discounting Plaintiff's assertion that her pain symptoms are totally disabling. Specifically, the ALJ noted that: (1) Plaintiff has received only limited or conservative treatment; (2) that medical evaluations show only minimal findings; (3) Plaintiff was not recommended for surgery; and (4) that her activities of daily living belie her claim of total disability (Tr. 19-20). These reasons are supported by substantial evidence of record. If an ALJ gives at least three reasons for discrediting a plaintiff's subjective complaints of pain, a court may find the ALJ properly discredited the subjective pain testimony. *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989).